IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RAYMOND HOLLAND,** | **CIVAL ACTION** |
| Plaintiff, | |
| *v.* | **NO. 23-0910-KSM** |
| **PROGRESSIVE SPECIALTY INSURANCE COMPANY,** | |
| Defendant. | |

## <u>MEMORANDUM</u>

**Marston J.**                                                                      **April 10, 2023**

Plaintiff Raymond Holland was injured in a car accident on August 11, 2019.  He claims that while stopped at a traffic light, his vehicle was "violently rear-ended by . . . Renee Dixon, causing [Holland] to suffer severe, painful, and possibly permanent injuries."  (Doc. No. 1-1 at ¶ 4.)  At the time, Dixon was insured by Allstate Insurance Company under a policy with a $100,000 limit.  (*Id.* at 4 ¶¶ 6, 14.)  Holland arbitrated his claims against Dixon on November 28, 2022 and was awarded $58,029.85.  (*Id.* at 10, 12.)  In consideration of this amount, Holland released all claims against Dixon, Allstate, and "any other person, firm, or corporation" chargeable with responsibility for the accident.  (*Id.*)  On this release, however, Howard included a handwritten clause reserving his "right to bring a UIM/UM claim against his insurance carrier and collect underinsured coverage under his policy."  (*Id.*)

Before signing the release, Holland sent a "Request for Settlement Approval and UIM Demand and Excess Letter" to his insurance carrier, Defendant Progressive Specialty Insurance Company.  (*See id.* at 12–15.)  In that letter, Holland argued that the arbitrator failed to acknowledge that the "main injury that [Holland] sustained in this accident was to his head," and

based on this error, [the arbitrator] significantly undervalued his damages." (*Id.* at 14–15.) Holland estimated that continued medical treatment for his injuries will total $50,000 or more and that "any jury would award him way above the tortfeasor's $100k policy and his $25k UIM policy limits combined." (*Id.*)  Accordingly, he demanded that Progressive provide the $25,000 policy limit. (*Id.*)

Progressive's written response shows that it denied the UIM claim after reviewing the arbitration agreement and arbitration award. (*Id.* at 17.)  Progressive notes that the "Arbitrator, after a full hearing, found that [Holland's] damages did not exceed the tortfeasor credit." (*Id.*) Accordingly, "it is Progressive's position that the damages sustained by Mr. Holland related to the accident were not caused by an underinsured motorist as that term is defined the case law." (*Id.*)

## I.  PROCEDURAL HISTORY

Holland filed suit against Progressive in the Pennsylvania Court of Common Pleas of Delaware County on February 8, 2023. (*See* Doc. No. 1-1.)  The Complaint asserts two counts: (1) breach of contract, and (2) bad faith in violation of 42 Pa. Stat. & Cons. Stat. § 8371. (*Id.* at 5–6.)  Progressive removed the case to this Court on March 9, 2023, on diversity jurisdiction grounds. (Doc. No. 1.)  One week later, it moved to dismiss the Complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 7; *see also* Doc. No. 10.)  Holland opposes that motion. (Doc. No. 8.)

## II.  LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). "However an exception to the general rule is that a document *integral to or explicitly relied upon* in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *Id.* (quotation marks omitted and alterations accepted); *see also Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 32 (3d Cir. 2011) (explaining that the court may "consider documents attached to the complaint"). The court may also consider matters of public record, orders, . . . and items appearing in the record of the case." *Keystone Redevelopment Partners, LLC v. Decker*, 631 F.3d 89, 95 (3d Cir. 2011) (quotation marks omitted).

## III.   DISCUSSION

Progressive argues that Holland's breach of contract claim is barred by the doctrine of collateral estoppel and that he has failed to allege any facts to support his bad faith claim. (Doc. No. 7-2 at 4–15.) The Court addresses each issue in turn.

### A.   Breach of Contract

In Count I, Holland argues that Progressive breached the parties' insurance contract when it "unreasonably and unlawfully denied [Holland's] claim for his underinsured motorist benefits." (Doc. No. 1-1 at 5.)

Pennsylvania's Motor Vehicle Financial Responsibility Law ("MVFRL") requires all

automobile insurance providers to offer underinsured motorist ("UIM") coverage, unless the named insured rejects the coverage in a signed, written wavier. *See* 75 Pa. Stat. & Cons. Stat. § 1731(a)–(b); *see also Harvey v. Lib. Mut. Grp., Inc.*, 8 F. Supp. 3d 666, 673 (E.D. Pa. 2014). UIM coverage provides protection for individuals "who suffer injury arising out of the maintenance or use of a motor vehicle" when those individuals "are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles." *Id.* § 1731(c). An "underinsured motor vehicle" is defined as "[a] motor vehicle for which the limits of available liability insurance and self-insurance are insufficient to pay losses and damages." *Id.* § 1702. According to the Complaint, Holland had $25,000 in UIM coverage under his policy with Progressive and Progressive breached that policy when it denied him UIM benefits. (Doc. No. 1-1 at ¶ 17.)[1]

Progressive argues that this claim fails because Holland's damages were established by a final arbitration award, and Holland is, therefore, precluded from arguing in this action that his damages were more than $58,029.85. (Doc. No. 7-2 at 4–7.) Progressive then reasons that because the $58,029.85 award is fully covered by Dixon's $100,000 policy, Dixon was not an underinsured motorist as a matter of law, and Holland is not entitled to UIM benefits. (*Id.*)

Collateral estoppel, also known as issue preclusion, "precludes relitigation of an issue

---

[1] At times the Complaint is extremely difficult to follow. It uses the terms "underinsured" and "uninsured" interchangeably, even though those are distinct concepts. (*Compare, e.g.*, Doc. No. 1-1 at ¶ 12 (referring to his claim for "underinsured motorist benefits"), *with e.g.*, *id.* at ¶ 15 (referring to Plaintiff's "uninsured motorists claim").) The Complaint also states that the "vehicle owned and operated by Mr. Raymond Holland is an uninsured motor vehicle as defined by the Progressive policy," (*id.* at ¶ 13), even though he now seeks to recover as an insured under that very same policy (*id.* at ¶ 10). Despite these confusing assertions, Holland appears to be bringing a claim for *under*insured, not *un*insured, benefits. He repeatedly refers to his claim as one for "UIM" coverage, and his initial demand to Progressive was for "underinsured motor benefits." (*Id.* at 5 ¶¶ 10, 12.) Finally, Progressive's motion to dismiss proceeds under the assumption that the Complaint asserts only a UIM claim, and Holland's response does not argue otherwise. (*See generally* Doc. Nos. 7-2, 8.) Indeed, Holland's response lacks any recitation of facts or outline of the relevant claims.

determined in a previous action." *Office of Disciplinary Counsel v. Kiesewetter*, 889 A.2d 47, 50 (Pa. 2005) ("The doctrine of collateral estoppel precludes relitigation of an issue determined in a previous action."); *Incollingo v. Maurer*, 575 A.2d 939, 940 (Pa. Super. 1990) (explaining that collateral estoppel "operates to prevent a question of law or issue of fact which has once been litigated and fully determined by a court of competent jurisdiction from being relitigated in a subsequent suit"). The doctrine applies when five factors are met:

> (1) the issue decided in the prior case is identical to the one presented in the later action; (2) there was a final adjudication on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment."

*Office of Disciplinary Counsel*, 889 A.2d at 50–51. The party seeking estoppel bears the burden of demonstrating that it should apply. *See Holtec Int'l v. ARC Machines, Inc.*, 492 F. Supp. 3d 4330, 439 (W.D. Pa. 2020).

Without additional information on the scope of the arbitration, the Court cannot, at this early stage in the proceedings, find that Progressive has satisfied its burden of showing that collateral estoppel applies. Neither party has submitted a copy of the arbitration agreement, the arbitration record, or the arbitrator's findings, and the discussion of the arbitration in the Complaint is limited to a single sentence: "At the time of the accident, Ms. Renee Dixon was an insured driver with Allstate Insurance Company that settled the third party case in a high/low arbitration that specifically allowed Plaintiff to pursue a claim for underinsured motorist benefits under his own automobile insurance policy with Defendant." (Doc. No. 1-1 at ¶ 6.) This sentence suggests that the issue of liability and the scope of Holland's damages arising from the accident were at issue in the arbitration, and thus, factor one of the collateral estoppel test may be

satisfied.  *See Harvey*, 8 F. Supp. 3d at 674 ("The issue decided in the prior case, the monetary amount of [the plaintiff's] losses and damages as a result of his car accident, is identical to the issue before this Court.").  Likewise, there appears to be no dispute that Holland was a party to the arbitration, thus satisfying the third factor.

But without a copy of the arbitration agreement, the arbitration record, or additional allegations related to the arbitration, the Court cannot say whether the remaining factors are also satisfied.  Among other things, it is unclear whether the parties agreed that the arbitration would be binding, as Progressive suggests.  Other than the final dollar amount, it is also unclear how the arbitrator ruled and the scope of that ruling.  Finally, it is unclear whether and to what extent the parties were able to submit evidence during the arbitration, and if so, what consideration the arbitrator gave that evidence.  Notably, the documents attached to the Complaint suggest that Holland may dispute whether he had a full and fair opportunity to litigate his damages during the arbitration.  In his demand letter to Progressive, Holland's counsel asserts that the arbitrator "failed to acknowledge" Holland's head injury, "incorrectly claiming that (1) [Holland] was able to continue working as a forklift operator after this collision happened and (2) that [Holland] had previously testified during his deposition that he had not injured his head upon impact."  (Doc. No. 1-1 at 12 (arguing that "neither Plaintiff nor Defendant's counsel were able to obtain the Plaintiff's deposition transcript and therefore there was no 'previous testimony' for the Arbitrator to refer to").)

In short, although collateral estoppel may be a determinative basis to dismiss this matter, the Court cannot find, at this time, that it compels dismissal of Holland's breach of contract claim.  *See Holtec Int'l v. ARC Machines, Inc.*, 492 F. Supp. 3d 4330, 439 (W.D. Pa. 2020) ("Here, the court lacks the arbitration record and is unable to determine whether Holtec was

precluded from a full and fair opportunity to litigate its third-party and direct claims against AMI.  Under these circumstances, AMI has not met its burden to establish as a matter of law that collateral estoppel applies to foreclose litigation of Holtec's claims.").  *Contra. Harvey*, 8 F. Supp. 3d at 675–77 (considering the language of the parties' arbitration agreement and finding, at summary judgment, that collateral estoppel foreclosed the plaintiff's UIM claim); *Shiffer v. Liberty Mut. Fire Ins. Co.*, 3:17-CV-978, 2019 WL 3297513, at *2–3, *7–18 (M.D. Pa. July 22, 2019) (considering the language of the parties' arbitration agreement and the arbitration record and finding, at summary judgment, that collateral estoppel foreclosed the plaintiff's UIM claim).

The motion to dismiss is denied as to Count I.  If appropriate, Progressive may raise the issue of collateral estoppel again in a motion for judgment on the pleadings or at summary judgment.

### B.    Bad Faith

Progressive has also moved to dismiss Count II, Holland's claim that Progressive denied his request for UIM benefits in bad faith.  *See* 42 Pa. Stat. & Cons. Stat. § 8371 (allowing an insured to recover interest, punitive damages, court costs, and attorney's fees "if the court finds that the insurer has acted in bad faith toward the insured" in an "action arising under an insurance policy").  To bring a claim for bad faith under this provision, the plaintiff must allege facts tending to show:  "(1) that the insurer lacked a reasonable basis for denying benefits; and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis." *Klinger v. State Farm Mut. Auto. Ins. Co.*, 115 F.3d 230, 233 (3d Cir. 1997).  Actions constituting bad faith include an unreasonable refusal to pay benefits, "a lack of investigation, unnecessary or unfounded investigation, failure to communicate with the insured, or failure to promptly acknowledge or act on claims." *Ironshore Spec. Ins. Co. v. Conemaugh Health Sys., Inc.*, 423 F. Supp. 3d 139, 154–55 (W.D. Pa. 2019).  Bad faith may also refer to "poor claims-handling, the

7

insurer's failure to act with diligence or respond to the insured, scattershot investigation, and similar conduct." *Id.*

In the Complaint, Holland provides a litany of conclusory statements in support of his bad faith claim:

a.  Unreasonably denied the processing of a valid claim;

b.  Knew or recklessly disregarded the fact that the denial was unreasonable;

c.  Failing to objectively and fairly evaluate Plaintiff's claim;

d.  Engaging in dilatory and abusive claims handling;

e.  Failing to adopt or implement reasonable standards in evaluating Plaintiff's claim;

f.  Acting unreasonably and unfairly in response to Plaintiff' 8 claim;

g.  Not attempting in good faith to effectuate a fair, prompt, and equitable settlement of Plaintiff's claim in which the Defendant's liability under the policy had become reasonably clear;

h.  Subordinating the interests its insured and those entitled under its insured's coverage to its own financial monetary interests;

i.  Failing to promptly offer reasonable payment to the Plaintiff for wage loss or economic impairment, excess medical bills or other losses;

j.  Failing to reasonably and adequately investigate Plaintiff's claim;

k.  Failing to reasonably and adequately evaluate or review the medical and economic loss documentation in Defendant's possession;

l.  Violating the fiduciary duty owed to the Plaintiff;

m.  Acting unreasonably and unfairly by withholding uninsured motorist benefits justly due and owing to the Plaintiff;

8

n.     Failing to make an honest, intelligent, and objective settlement offer, and

o.     Causing Plaintiff to expend money on the presentation of her claim.

(Doc. No. 1-1 at 6–7.)  After this list, Holland states that "[f]or the reasons set forth above, Defendant Progressive . . . has failed to act toward Plaintiffs in good faith" and that "Progressive has engaged in wanton and reckless conduct with regard to the welfare, interest and rights of the Plaintiff."  (*Id.* at ¶¶ 23–24.)  Nowhere in the Complaint does Holland include any *facts* about Progressive's investigation or decision to deny Holland's claim, let alone explain how those facts show that Progressive lacked a "reasonable basis" for denying the UIM claim or acted in a "dilatory" manner.[2]  This falls far below the pleading requirements of *Twombly* and *Iqbal*.  *See Smith v. State Farm Mut. Auto. Ins. Co.*, 506 F. App'x 133, 136 (3d Cir. 2012) ("On its face, Smith's complaint (to which was attached copies of the parties' correspondence) fails to allege a legally sufficient cause of action for bad faith under § 8371.  The complaint consists of conclusory statements unsupported by facts—State Farm, e.g., 'breached covenants of good faith and fair dealing,' and 'engaged in unfair settlement negotiations.'  There are no details describing what was unfair about the negotiations.  Similarly, Smith simply asserts that State Farm 'intentionally misrepresented coverage in the policy,' and 'misrepresented facts and its evaluation of Plaintiff's claim,' without explaining what those misrepresentations may have

---

[2] In Holland's opposition brief, he argues that Progressive acted in bad faith when it "cut[ ] off medical payments based on a limited review/investigation of his medical records and treatment."  (Doc. No. 8 at 9.)  This argument is untethered from the allegations in the Complaint.  *See Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss") (cleaned up).  Moreover, even if the Court were to view this allegation as true, Holland has not explained how Progressive's failure to review his medical records amounts to bad faith.  As the Court goes on to explain, Progressive had a reasonable basis for denying UIM benefits given the arbitration award.  Because this provided a reasonable, independent reason for denying benefits, Holland has not shown that Progressive had an obligation to consider his medical records.

been.") (cleaned up).[3]

Although the Complaint is completely devoid of factual allegations, Holland does attach a copy of Progressive's email denying his UIM claim.  (*See* Doc. No. 1-1 at 16–18.)  Because that email serves as the basis for Holland's bad faith claim, the Court may consider it in deciding this motion to dismiss.  *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426; *see also Huertas*, 641 F.3d at 32.  The email states that the representative "reviewed the arbitration award and arbitration agreement materials" and notes that "the Arbitrator, after a full hearing, found that your client's damages did not exceed the tortfeasor credit."  (Doc. No. 1-1 at 17.)  "Therefore, it is Progressive['s] position that the damages sustained by Mr. Holland related to the accident were not caused by an underinsured motorist as that term is defined in the case law noted herein and the Policy."  (*Id.*)

Although the Court reserves ruling on whether collateral estoppel applies to the damages award in this case, Progressive's argument that it does and that Dixon was, therefore, not driving an underinsured motor vehicle, is reasonable and supported by the case law.  *See Kurtz v. Westfield Ins.*, 610 F. Supp. 3d 703, 710 (E.D. Pa. 2022) (finding the plaintiff was precluded

---

[3] *See also, e.g.*, *Atiyeh v. Nat'l Fire Ins. Co. of Hartford*, 742 F. Supp. 2d 591, 600–01 (E.D. Pa. 2010) ("In his Amended Complaint, plaintiff further avers that defendant (1) falsely and fraudulently represented that plaintiff had not performed routine maintenance on the premises; (2) unreasonably refused to indemnify plaintiff for his loss; and (2) breached its duty of good faith and fair dealing by: (a) failing to conduct a reasonable investigation, (b) denying benefits to plaintiff without a reasonable basis, (c) knowingly or recklessly disregarding the lack of a reasonable basis to deny plaintiff's claim, or (d) asserting policy defenses without a reasonable basis.  However, these averments are merely conclusory legal statements and not factual averments. . . .  Accordingly, I conclude that plaintiff's bad faith claim is insufficient to state a claim on which relief can be granted."); *Kelly v. Progressive Advanced Ins. Co.*, CIVIL ACTION NO. 20-5661, 2021 WL 4399657, at *4 & n.4 (E.D. Pa. Sept. 27, 2021) (granting motion to dismiss bad faith claim where the complaint listed 26 conclusory assertions of bad faith but "allege[d] no factual content to suggest Defendant lacked a reasonable basis for denying the UIM coverage, or that Defendant knew or recklessly disregarded the lack of reasonable basis"); *Brown v. LM Gen. Ins. Co.*, CIVIL ACTION No. 21-2134, 2021 WL 3809075, at *2–3 (E.D. Pa. Aug. 26, 2021) (dismissing bad faith claim where "[a]ll told, the Amended Complaint contains a list of 38 ways in which Liberty Mutual allegedly acted in bad faith.  But this list is a list of conclusions—not facts").

from relitigating the amount of damages, which was found to be $40,000 in a binding arbitration,

and explaining that this finding "defeats [the plaintiff's] UIM Claim as a matter of law because

[the tortfeasor's] policy limit [of $50,000] exceeded [the plaintiff's] damages"); *see also Harvey*,

8 F. Supp. 3d at 675–77; *Shiffer*, 2019 WL 3297513, at *2–3, *7–18.  Holland has not alleged

any facts or put forth any argument to the contrary or otherwise suggested that Progressive

denied his claim with "ill will" or a "dishonest purpose."  *See Terletsky v. Prudential Prop. &*

*Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994) ("'Bad faith' on part of insurer is any

frivolous or unfounded refusal to pay proceeds of a policy . . . .  For purposes of an action against

an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a

breach of a known duty . . . through some motive of self-interest or ill will; mere negligence or

bad judgment is not bad faith.") (quoting *Insurance*, Black's Law Dictionary 139 (6th ed. 1990)).

Neither has Holland alleged that Progressive's response, which was sent one month after

Holland's demand, was made with undue delay.  *See Desalis v. Nationwide Prop. & Cas. Ins.*

*Co.*, CIVIL ACTION NO. 20-1771, 2021 WL 4078035, at *3 (E.D. Pa. May 5, 2021)

("Plaintiff's opposition to summary judgment premises her bad faith claim on the delay between

the insurance adjuster's inspection of the property on December 5, 2019, and Defendant's

payment on the undisputed amount of the loss on March 24, 2020, a period of 3 months and 19

days.  However, Plaintiff has failed to raise a material dispute of fact or point to clear and

convincing evidence that this delay in paying her claim was without reasonable basis.  The

undisputed facts provide an objectively reasonable justification for the delay:  the investigation,

preparation, and approval of the adjuster's estimate.").  *Contra. Davis*, 32 Pa. D. &C. 5th at *5

("Fidelity knew of and was recklessly indifferent due to its lack of a reasonable basis for failing

to resolve the Davis' claim during the nearly five (5) year period in question.").

Because the Complaint fails to allege any facts suggesting that Progressive acted in bad faith—and, to the contrary, suggests Progressive had a reasonable basis for denying the UIM claim and sent that denial in a timely fashion—the motion to dismiss is granted as to Count II.

**IV.      CONCLUSION**

For the reasons discussed above, the motion to dismiss is denied as to Count I and granted as to Count II.  An appropriate Order follows.